NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

THOMAS J. McCARRON,  )
DOC #105068,  )
  )
Appellant,  )
  )
v.  )  Case No.  2D14-3097
  )
STATE OF FLORIDA,  )
  )
Appellee.  )
_____  )

Opinion filed February 10, 2016.

Appeal from the Circuit Court for Pasco
County; William R. Webb, Judge.

Howard L. Dimmig, II, Public Defender, and
Carol J. Y. Wilson, Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Peter Koclanes, Assistant
Attorney General, Tampa, for Appellee.

WALLACE, Judge.

Thomas J. McCarron challenges the revocation of his probation and his

sentence of thirty years in prison.  Because the trial court revoked Mr. McCarron's

probation based in part on conduct not alleged in the affidavit of violation of probation,

we reverse the revocation of probation, the new judgment, and the resulting sentences.

## I. THE UNDERLYING OFFENSES AND SENTENCES

In November 2005, Mr. McCarron entered negotiated pleas of nolo contendere to the following offenses: Count 1, attempted sexual battery by a person over eighteen years of age upon a child less than twelve years of age, a violation of sections 777.04(1) and 794.011(2)(a), Florida Statutes (1999), a first-degree felony; Count 2, lewd or lascivious exhibition upon a person less than sixteen years of age, a violation of section 800.04(7), Florida Statutes (1999), a second-degree felony; and Count 3, lewd or lascivious molestation by a person over eighteen years of age on a child less than twelve years of age, a violation of section 800.04(5)(a)-(b), a first-degree felony.[1]  In accordance with the terms of the plea negotiations, the trial court sentenced Mr. McCarron to serve ten years in prison, followed by ten years on sex offender probation on each count.[2]  The sentences were designated to run concurrently.  In addition, Mr. McCarron was designated as a sexual predator.

## II. MR. McCARRON'S PERFORMANCE ON PROBATION

On June 4, 2013, after serving his time in prison, Mr. McCarron began serving the probationary portion of his sentences.  At that time, Mr. McCarron was sixty-six years old.  Mr. McCarron was disabled and walked with a cane.  One of the conditions of Mr. McCarron's sex offender probation was that he participate in and successfully complete a sex offender treatment program.  Although Mr. McCarron had

---

[1]The dates of the offenses as alleged in the amended information were from June 15, 1999, to September 26, 1999.

[2]With regard to the offense in Count 2, this was an illegal sentence.  The ten years' prison and ten years on probation exceeded the fifteen-year maximum for a second-degree felony.  See § 775.082(3)(c), Florida Statutes (1999); Fla. R. Crim. P. 3.704(d)(25); Cillo v. State, 913 So. 2d 1233, 1234 (Fla. 2d DCA 2005).

entered such a program, he was later temporarily excused from attending the treatment sessions because of his "numerous medical issues."

Mr. McCarron had a "stable residence" situation at a motel on US Highway 19 in Pinellas Park where a number of persons who had committed various sexual offenses also lived. Mr. McCarron received $602 per month from Social Security. He earned extra money by doing odd jobs when he was able for the motel's owner. These odd jobs included cutting up cardboard boxes and taking them to a dumpster.

Mr. McCarron shared his room at the motel with one other man. Mr. McCarron had decorated his portion of the room in an Oriental motif. The decorative scheme featured two Samurai swords hung on the wall above the headboard attached to Mr. McCarron's bed; pictures of cherry blossoms, Asian tigers, and dragons; and two Asian fans.

### III.  THE FACTUAL BASIS FOR THE ALLEGED VIOLATIONS

On February 26, 2014, several probation officers, accompanied by several officers from the Pinellas Park Police Department, conducted a "planned compliance initiative" (PCI) at the motel where Mr. McCarron resided. "A planned compliance initiative is a sweep in which [probation and parole] officers conduct unannounced visits to offenders to ensure that they are in compliance with the conditions of their supervision." Press Release, Florida Department of Corrections, Probation Officers Partner with Fellow Law Enforcement Agencies to Keep Florida Safe (July 21, 2015), http://www.dc.state.fl.us/secretary/press/2015/07-21-partnerships.html (last visited Nov. 13, 2015). During the course of this PCI, the officers encountered numerous

probationers at the motel, including Mr. McCarron. A police officer or officers encountered Mr. McCarron as he was walking back to his room from the motel dumpsters. During a search of Mr. McCarron's person, one of the police officers found a knife[3] in Mr. McCarron's pants pocket. A probation officer also found the two Samurai swords mounted on the wall above the headboard attached to Mr. McCarron's bed. Finally, a probation officer found three knives located "in a little box" on the nightstand next to Mr. McCarron's bed. The probation officer who found the three knives in the box testified at the revocation hearing that Mr. McCarron had acknowledged that these three knives belonged to him. At the completion of the execution of the PCI, Mr. McCarron was arrested and jailed until the revocation hearing, which was conducted on June 16, 2014.

## IV. THE ALLEGED VIOLATIONS OF PROBATION

The day after Mr. McCarron's arrest, Dawn M. Holcomb, Mr. McCarron's probation officer, filed an affidavit alleging that Mr. McCarron had violated the conditions of his sex offender probation in two respects. First, Ms. Holcomb alleged that Mr. McCarron had committed a new law violation. In her affidavit, she alleged:

> **Violation of Condition (8) of the Order of Probation,** by possessing, carrying, or owning any weapon, without first procuring the consent of the probation officer

---

[3]The State's witnesses described this knife as "a spring-loaded knife." Mr. McCarron denied that the knife was a spring-loaded knife. He explained that the knife had a nub on it that enabled him to open it with one hand. The trial court described the knife as "a folding combat-style knife." Although the State introduced a photograph of the knife into evidence at the revocation hearing, the photograph does not appear in our record. However, the exact nature of the knife's operation is not critical to our analysis. Defense counsel did not claim that the knife qualified as a "common pocketknife" and thus did not qualify as a weapon. See § 790.001(13), Fla. Stat. (2013); Bunkley v. State, 882 So. 2d 890, 894-96 (Fla. 2004); L.B. v. State, 700 So. 2d 370, 373 (Fla. 1997).

and as grounds for belief that the offender violated his sex offender probation, Officer Dawn M. Holcomb states that on 2/26/2014 the offender did possess a spring loaded knife a law violation, as told to Officer Dawn M. Holcomb on 2/27/2014, by probation officer Ryan Wilcox.[4]

Second, Ms. Holcomb alleged that Mr. McCarron had failed to follow the instructions given to him. In this regard, she alleged:

**Violation of Condition (10) of the Order of Probation,** by failing to comply with all instructions given to him by the probation officer, and as grounds for belief that the offender violated his sex offender probation, Officer Dawn M. Holcomb states that on 6/5/2013, the offender was instructed that he could not posses[s] any firearms, weapons or explosive devices and the offender did fail to carry out this instruction by having in his pocket a spring loaded knife.

Notably, neither of these alleged violations included Mr. McCarron's possession of the two Samurai swords or the three knives in the box on his nightstand.

## V. THE PROBATION OFFICER'S RECOMMENDATION

Despite filing the affidavit for violation of probation, Ms. Holcomb did not propose sending Mr. McCarron back to prison. In her written report on the alleged violations, Ms. Holcomb said:

This is the offender's first violation since being placed on probation. Up until this point the offender has been compliant with all conditions of his probation, therefore this officer would recommend that the offender remain on supervision at this time.

---

[4]We note that this allegation is insufficient because it fails to state with specificity the law that Mr. McCarron was alleged to have violated. Hines v. State, 358 So. 2d 183, 185 (Fla. 1978); Burton v. State, 651 So. 2d 793, 794 (Fla. 1st DCA 1995). Nevertheless, defense counsel did not challenge the sufficiency of the allegation. On appeal, the State argues that the possession by Mr. McCarron—a convicted felon—of the knife in his pants pocket constituted a violation of section 790.23(1)(a), Florida Statutes (2013). However, the State did not make this argument in the trial court. Furthermore, the trial court did not make a finding that Mr. McCarron had violated section 790.23(1)(a).

Ms. Holcomb assumed that on account of the alleged violations Mr. McCarron would be required to submit to electronic monitoring in accordance with section 948.063(2), Florida Statutes (2013). However, because Mr. McCarron's offenses were committed before September 1, 2005, the imposition of an electronic monitoring requirement was not mandatory but could be imposed at the discretion of the trial court. See Witchard v. State, 68 So. 3d 407, 411 (Fla. 4th DCA 2011).

## VI. THE HEARING ON THE ALLEGED VIOLATIONS OF PROBATION

In order to understand what happened at the revocation hearing, it will be helpful to understand the participants' basic assumptions. Everyone involved—Mr. McCarron's probation officer, defense counsel, the prosecutor, and the trial judge—seems to have assumed that Mr. McCarron's *mere possession* of the knife in his pocket and the other knives and the Samurai swords constituted a violation of the conditions of his probation. This assumption was mistaken. However, the fact that this mistaken belief guided the actions of all of the parties involved does much to explain the course of the proceedings. With this preliminary understanding in mind, we proceed to the events at the hearing.

Ms. Holcomb, Mr. McCarron's probation officer, testified that she had taken over the supervision of Mr. McCarron in July 2013. She reiterated that he had been compliant with all of the conditions of his probation. In addition, Mr. McCarron had been reporting as required and was testing negative for prohibited substances. With regard to the two Samurai swords, Ms. Holcomb had seen them in Mr. McCarron's room during a regular visit one week before the execution of the PCI. With admirable candor, Ms. Holcomb testified that she did not immediately recognize the Samurai swords as a

violation of the conditions of Mr. McCarron's probation.  She added that she had planned to tell Mr. McCarron to get rid of the swords but had not had an opportunity to do so before the execution of the PCI and Mr. McCarron's arrest.  Two other probation officers[5] testified to the details of the search of Mr. McCarron that revealed the knife in his pants pocket and the search of his room that resulted in the recovery of the three other knives and the two Samurai swords.

The particulars of the violations of probation alleged in Ms. Holcomb's affidavit were limited to the knife found in Mr. McCarron's pants pocket during a search of his person at the motel.  Mr. McCarron testified that he used this knife as a tool, not as a weapon.  Specifically, he used the knife to cut up boxes in connection with the odd jobs that he performed for the motel owner.  He also used this knife to cut up food for his pets.  Mr. McCarron explained that the knife's features were convenient to him because they enabled him to open the knife with one hand while his other hand held the cane that he used to support himself.

Mr. McCarron's testimony at the hearing also addressed the additional items that had not been mentioned in the affidavit for violation of probation.  He said that the Samurai swords attached to the wall above his bed were part of his Oriental decorative motif.  Mr. McCarron testified that he had the three knives found in the box on his nightstand because he was sharpening them for a friend.

---

[5]It is apparent from the record that neither of these probation officers were present when Mr. McCarron was initially detained and searched.  An officer or officers employed by the Pinellas Park Police Department actually detained and searched Mr. McCarron.  None of the Pinellas Park police officers who participated in the execution of the PCI testified at Mr. McCarron's revocation hearing.

At the conclusion of the hearing, the trial court made oral findings that Mr. McCarron had violated conditions 8 and 10 of his probation as alleged in the affidavit. The trial court based these findings not only on Mr. McCarron's possession of the knife found in his pants pocket, but also on the two Samurai swords attached to the wall and the three other knives located in the box on the nightstand. The trial court's oral ruling was as follows:

> I do find that the defendant was advised when he began on probation, he was instructed on 8/7/13. And he acknowledged that a condition of his probation is that he was not to possess or use any weapons, firearm[s], or knives.
>
> That on 2/26/2014, he did, in fact have two Samurai-type steel swords hanging on the wall in his bedroom in his possession. They were sharpened blade steel swords, that that is in violation of his conditions of probation.
>
> That he had a folding combat-style knife in his pocket. This is not a butter knife by any stretch of the imagination. This is a folding sharpened steel combat-style knife that's— while it might be capable of opening boxes, it's also fully capable of slitting people's throats.
>
> And that he, likewise, had two [sic] more folding combat-style knives in his possession in a box on his nightstand.
>
> I don't find the defendant's statements at all credible that he felt they were tools of the trade in terms of implements. These are dangerous looking, dangerous combat-style folding knives that are typically possessed for one and only one purpose, that is to inflict injury on people.
>
> Clearly, clearly somebody on sex-offender probation is not to be in possession of these combat-style folding knives.
>
> And I don't find his statement that he didn't realize they were prohibited by his conditions of probation at all credible. In fact, I find his statements incredible.

- 8 -

> I, therefore, find that he has willfully and substantially
> violated his probation as alleged in terms of violating
> Condition 8 and 10.

The trial court's findings of fact were limited to Mr. McCarron's *possession* of the knives and the Samurai swords. The trial court did not find that Mr. McCarron's conduct amounted to a *concealed carry* of the knife found in his pocket or that he had violated section 790.23(1)(a).

Defense counsel did not argue that the State had failed to prove a new law violation. In addition, defense counsel did not argue that the State had failed to prove that Mr. McCarron had violated the conditions of his probation. Undoubtedly acting on the erroneous assumptions outlined above, defense counsel limited her remarks to matters in mitigation.

Unfortunately, the trial court did not enter a written order of revocation of probation. Instead, the trial court signed a preprinted form titled "Plea/Disposition on Violation of Probation/Community Control." This preprinted form erroneously recited that Mr. McCarron had admitted the alleged violations of probation. Of course, this was not accurate; Mr. McCarron contested the alleged violations. The so-called "Plea/Disposition" form fails to set forth any findings concerning the alleged violations.[6]

The trial court had adjudicated Mr. McCarron guilty of the offenses alleged in all three counts of the amended information when he entered his nolo contendere plea to the underlying charges in 2005. Nevertheless, after revoking Mr. McCarron's

---

[6]The "Plea/Disposition" form is insufficient. The trial court was required to enter a proper order of revocation of probation detailing the violations of probation found by the court. See Cato v. State, 845 So. 2d 250, 251 (Fla. 2d DCA 2003); Donley v. State, 557 So. 2d 943, 944-45 (Fla. 2d DCA 1990).

probation, the trial court entered a second judgment finding Mr. McCarron guilty of the offenses again.[7]  The trial court sentenced Mr. McCarron to serve a term of thirty years in prison on Counts 1 and 3, with credit for all time previously served.[8]  The sentences were designated to run concurrently.

Because Mr. McCarron had already served ten years in prison, the sentence imposed upon the revocation of his probation amounted to a twenty-year sentence.  According to the Department of Corrections website, Mr. McCarron's current release date is March 25, 2035.  If Mr. McCarron were to survive to serve that sentence to completion, he would be almost eighty-eight years old upon his release from prison.

## VII.  MR. McCARRON'S APPELLATE ARGUMENTS

On appeal, Mr. McCarron makes two arguments.  First, he contends that the knife found in his pants pocket during the execution of the PCI at the motel where he resided had a legitimate use as a tool for his work.  Because Mr. McCarron reasonably believed that he could possess the knife for work purposes, the State did not prove that he had willfully and substantially violated the conditions of his probation.  Second, Mr. McCarron argues that the trial court impermissibly relied on the two Samurai swords and the three other knives—items not charged in the affidavit for violation of probation—in reaching its decision to revoke his probation and to send him back to prison for twenty years.

---

[7]The entry of a duplicative judgment of conviction is impermissible for the reasons that this court has previously detailed in Pierce v. State, 150 So. 3d 1207, 1208-09 (Fla. 2d DCA 2014).

[8]Apparently because the sentence previously imposed on Count 2 was an illegal sentence, the trial court did not impose any new sentence for the offense alleged in that count.

## VIII.  DISCUSSION

### A.  The Willful and Substantial Violation Issue

To be fair, defense counsel did say at one point that Mr. McCarron's conduct did not amount to "a substantial violation."  Unfortunately, she failed to elaborate on this remark or to develop her point.  Moreover, defense counsel made her remark after the trial court had already ruled and as part of her argument for the restoration of Mr. McCarron to supervision or for a lenient sentence.  Read in context, we do not view this isolated remark as preserving for appellate review the issue of whether Mr. McCarron's conduct amounted to a substantial violation.  "[A]n objection must be sufficiently specific both to apprise the trial judge of the putative error and to preserve the issue for intelligent review on appeal."  Castor v. State, 365 So. 2d 701, 703 (Fla. 1978).  Moreover, assuming that Mr. McCarron's conduct did violate the conditions of his probation, it would be difficult to say that Mr. McCarron's undisputed possession of four "combat-style" knives and two Samurai swords did not amount to a substantial violation.[9]

### B.  The Issue of the Trial Court's Reliance on Matters Not Alleged

In reaching its decision to revoke Mr. McCarron's probation and to send him back to prison, the trial court did not rely only on his possession of the knife found in his pants pocket.  On the contrary, the trial court also specifically relied on his possession of the two Samurai swords and on his possession of the three knives located in the box on his nightstand.  As previously noted, Mr. McCarron's possession of

---

[9]We do not address the issue of whether the evidence was sufficient for the trial court to find that Mr. McCarron's possession of the knife in his pants pocket was a violation of section 790.23(1)(a).

these items was not alleged in the affidavit for violation of probation. Thus Mr. McCarron had no notice that the State would seek to revoke his probation based on his possession in his residence of five edged weapons not mentioned in the charging document that formed the basis for the requested revocation of probation.

"Among the minimal requirements of due process in a revocation proceeding is written notice of the alleged violation." M.T. v. State, 805 So. 2d 898, 899 (Fla. 2d DCA 2001) (citing Burton v. State, 651 So. 2d 793 (Fla. 1st DCA 1995)). Here, Mr. McCarron did not receive written notice of his alleged possession of five of the six weapons that formed the basis upon which the trial court revoked his probation. The procedure followed in the trial court deprived Mr. McCarron of his right to due process of law and constituted error. See M.T., 805 So. 2d at 899; Burton, 651 So. 2d at 794-95; Bishop v. State, 21 So. 3d 830, 832 (Fla. 1st DCA 2008); Kane v. State, 397 So. 2d 1169, 1169-70 (Fla. 3d DCA 1981).

The trial court's decision to revoke Mr. McCarron's probation based on his possession of these additional items was improper because of the lack of proper written notice. This court has set forth the appropriate inquiry for appellate review of an order revoking probation or community control under these circumstances as follows:

> When a trial court relies on both proper and improper grounds for revocation but it is clear from the record that the trial court would have revoked probation even without the existence of improper grounds, this court and others have affirmed the revocation of probation and remanded for the entry of a corrected revocation order. Only when this court cannot determine from the record whether the trial court would have revoked the defendant's probation based solely on the proper grounds will this court reverse and remand for reconsideration by the trial court.

Lee v. State, 67 So. 3d 1199, 1201-02 (Fla. 2d DCA 2011) (citations omitted).

Here, it was undisputed that at least until the execution of the PCI on February 26, 2014, Mr. McCarron had been compliant with all of the terms of his probation, and he had been reporting as required. He had a stable residence at the motel in Pinellas Park that housed various other sex offenders. Mr. McCarron was testing negative for the use of prohibited substances. Ms. Holcomb, Mr. McCarron's probation officer, had observed the two Samurai swords in Mr. McCarron's room one week before the execution of the PCI, and she never informed him that his possession of these items was impermissible. Indeed, Ms. Holcomb's recommendation—which the trial court declined to follow—was that Mr. McCarron remain on supervision. We also note that Mr. McCarron, who was sixty-six years old at the time of the hearing, used a cane to walk and suffered from "numerous medical issues." The undisputed evidence established that he used the knife found in his pants pocket as a tool in connection with the odd jobs that he performed for the motel owner to earn a little extra money to supplement the meager income he received from Social Security. There was no evidence that Mr. McCarron had used the knife to threaten or to injure anyone. Mr. McCarron plausibly explained that the knife's features made it easy for him to open it with one hand while he used his other hand to hold his cane. In light of these facts, we cannot determine that the trial court would have revoked Mr. McCarron's probation and imposed on him what probably amounted to a life sentence simply because he had a knife in his pants pocket—one that he had never used to injure or threaten anyone—while he was in the immediate vicinity of his approved residence. Accordingly, the revocation of Mr. McCarron's probation must be reversed and the case remanded to the circuit court for further proceedings.

## C. Some Guidance on Remand

Because we are remanding this case to the trial court for further proceedings, we will briefly address a few matters for the guidance of the parties and the trial court. First, we address the question of the new law violation. Generally speaking, and with certain exceptions, a person who carries a concealed weapon commits a misdemeanor of the first degree. See § 790.01(1). However, a person may carry a concealed firearm or weapon in or about the immediate vicinity of his or her residence or place of business without violating the law. See § 790.25(3)(n); Peoples v. State, 287 So. 2d 63, 66-67 (Fla. 1973); Santiago v. State, 77 So. 3d 874, 876-77 (Fla. 4th DCA 2012); Brook v. State, 999 So. 2d 1093, 1096-97 (Fla. 5th DCA 2009); Russ v. State, 304 So. 2d 481, 481 (Fla. 1st DCA 1974). Mr. McCarron's possession of the knife in his pants pocket in the immediate vicinity of his residence was arguably a violation of section 790.23(1)(a)—if at all—only because he was a convicted felon. Cf. Williams v. State, 48 So. 3d 192, 194-95 (Fla. 2d DCA 2010) (A box cutter is "a tool that can be legally possessed and owned by a person, including a felon, for legitimate work purposes. . . . [E]ven a felon can legally carry a box cutter in a concealed pocket if he is carrying the box cutter for a legitimate work purpose and is not hiding it with the intent to use it, if necessary, as a weapon.")

Second, the parties and the trial court assumed that Mr. McCarron's possession of the two Samurai swords and the three knives located in the box on his nightstand was both a new law violation and a violation of the conditions of his probation. Neither of these assumptions was accurate. Mr. McCarron's mere possession of a sword or a knife in the privacy of his own residence was not a violation

of the law.  See § 790.25(3)(n) ("[I]t is lawful for the following persons to own, possess, and lawfully use . . . weapons . . . for lawful purposes: A person possessing arms at his or her home or place of business.").

Third, none of the conditions of Mr. McCarron's probation prohibits him from possessing *a weapon*.  Only condition 5 comes close: "You will not possess, carry or own any firearm."  But neither a sword nor a knife is a firearm.  The order of probation simply does not prohibit the possession of knives in particular or weapons in general.

Fourth, at the hearing, the State ignored the court-ordered conditions of Mr. McCarron's probation and focused instead on a "standard form" called "instructions to the offender" that Mr. McCarron was said to have signed in June 2013 at the beginning of his probation.[10]  In this form, Mr. McCarron was purportedly warned that he was not allowed "to possess, purchase, receive or transport firearm[s], weapons, or explosives."  (Emphasis added.)  To the extent that the alleged "instruction" given to Mr. McCarron by his probation officer in this form sought to prohibit him from possessing weapons generally, it is inconsistent with the conditions set forth in the order placing him on probation.  "Probation may only be revoked for violation of a condition which is imposed by the court, not the probation officer."  Ramirez v. State, 4 So. 3d 752, 753 (Fla. 2d DCA 2009) (quoting Hutchinson v. State, 428 So. 2d 739, 740 (Fla. 2d DCA 1983)).  "Thus, while a probation officer may give routine, supervisory instructions to a 'probationer, the probation officer cannot prescribe new conditions of probation.' "  Id. (quoting Hutchinson, 428 So. 2d at 740).  Accordingly, the alleged instruction provided

---

[10]The State did not offer either the original or a copy of this document into evidence, and it is not in our record.

- 15 -

by the form cannot constitute a basis for revoking Mr. McCarron's probation based on his open possession of the two Samurai swords and the three knives in the box on the nightstand in the privacy of his own residence.  See Kiess v. State, 642 So. 2d 1141, 1142 (Fla. 1994); Ramirez, 4 So. 3d at 753; Bishop, 21 So. 3d at 832.

## IX.  CONCLUSION

The trial court's reliance on Mr. McCarron's possession of five weapons that were not charged in the affidavit for violation of probation as a basis for the revocation of his probation was error.  Because we are unable to determine whether the trial court would have revoked Mr. McCarron's probation and given him what amounted to a life sentence based solely on his possession of a knife that he used in connection with odd jobs that he performed around his residence and to cut up food for his pets—a knife that he had never used to injure or threaten anyone—we reverse the order of revocation of probation and the new judgment and sentences.  We remand this case to the trial court for further proceedings.

Reversed and remanded.


KELLY, J., Concurs.
CRENSHAW, J., Concurs in result only.